May it please the Court, good morning. My name is Theresa McLaughlin and I represent the Commissioner, and I am hoping to reserve four minutes for rebuttal. So the Commissioner's position is that the tax court erred in holding that surrender charges can be considered in valuing life insurance policies that were distributed to the taxpayers from a non-qualified employee benefit plan. So the Commissioner's position is that amount actually distributed means something other than the proceeds the person actually received. Well, we think that amount actually distributed, which is part of the whole phrase, amount actually distributed or made available relates to timing. We think that that part of Section 402 means distribution or making available to draw upon is a taxable event. Arguably, you wouldn't need Section 402 to tax an employee benefit. Section 61, the gross income provision, is very broad. So Section 402 is probably necessary to say what is a taxable event, i.e., when it is taxable. Excuse me, I don't think you're answering Judge Hawkins' question. Could you, he asked you a specific question about specific words, and at least I didn't understand your answer. Would you answer his question, please? Well, I think the Commissioner's position is that the entire value of these life insurance contracts are includable in gross income. And we just disagree with the tax court that that initial language of Section 402 contains a valuation standard. We think that 402 first says distribution is a taxable event, and then it says it will be taxed under Section 72, which is the ordinary provision governing the taxation of payments received under annuity contracts and life insurance contracts. But the words, the amount actually distributed. I know Judge Holmes in the tax court seized on that one. There seemed to be no clear direction otherwise, and he's right about that, isn't he? We go to the language of the statute if we don't have anything otherwise. We have no problem with whatever it's worth is taxed. No, that's not what it says. It says the amount actually distributed. And in this case, it was net of the surrender charges, right? I know you disagree with that, but, I mean, isn't that what's distributed? Well, we think that what is distributed is the entire life insurance contract, because they became the owners of these life insurance contracts that had previously been owned by their company. The service wrote this reg, right? The service wrote the regulation, and we think that the regulation helps us. Well, here's the reason I ask that. The service also wrote Treasury Reg 1.402B1C1, which repeats the language amount actually distributed, and then goes on to talk about the entire benefit. Now, that suggests to me that the service knows how to write a reg to achieve the end that you describe, and for whatever reason didn't with the reg we're concerned with. What's your response to that? Well, if you read the regulation as a whole and you read it properly, it does support. Therein lies the rub. Okay. Well, when you're bringing in Section 72, you say it's taxable when distributed and it's taxable under Section 72. Section 72 has a broad rule of inclusion to begin with, and it's debatable whether if Section 402 didn't call for Section 72 to come into play, whether it would be applicable of its own force because it's talking about payments under an annuity or life insurance contract rather than a whole contract. But the second sentence of the regulation under this provision says, and by way of example, that when an entire annuity contract is distributed, it's includable in income at its entire value. The other regulation which I quoted specifically includes the language after saying amount actually distributed says, the entire value of the contract at the time of distribution. That is not in the regulation we're discussing, is it? It's in the regulation section 1.402 parentheses B-1C. And I'm not sure if there's a 1 after that, but that is the controlling. Yes, there is a 1 after that. C-1. But that's on qualified employee benefits as opposed to non-qualified, which is what we're dealing with here, isn't it? No, the qualified is Section 402A regulation. Okay. So the second sentence, which is only an example, says that if an entire annuity contract is distributed, then the whole thing will be, its entire value will be includable in income. And the tax court shied away from this sentence and said, well, that's just an annuity contract. But it was just an example. So we think that it also applies to the distribution of a whole life insurance contract. And so we think that the valuation standard that Congress was trying to achieve is in Section 72, because Section 72 doesn't just say what's excludable and what's not excludable when you get a payment under an annuity or insurance contract. Well, to that issue, the term made available under 402A15, which I understand is qualified, it's analogous to the concept of constructive receipt. And income that's constructively received is subject to, it isn't constructively received if it's subject to substantial limitations or restrictions. And in this case, where you have a surrender charge, doesn't that affect our understanding of what is made available? Well, no, because you could distribute the life insurance contract or you could make it available in an account to be drawn upon, or, you know, any item distributed from a non-qualified plan. And the taxpayer would be in constructive receipt even if he didn't draw upon it. So we actually think that what happens in the case of distributions from qualified plans under Section 402A helps us because the language of the two statutes is quite similar, talking about timing and talking about Section 72. The regulation at issue in Mathias also referred to the entire value, and the court held that the life insurance contract couldn't be valued with regard to surrender charges. Yeah, I think the Fourth Circuit or somebody noted the difference between the two treatments. I guess it was Mathias. No, that wasn't Mathias. It was Cadwell. Cadwell dealt with the vesting. When a contribution to a non-qualified plan is vested, that, too, is a taxable event. And in Cadwell, since the regulations, Section 402B1 doesn't talk about Section 72. It brings Section 83 into account, and under Section 83 you can't take a lapse restriction into account in valuing a contract. Suppose we were to conclude that the arguments the commissioner is making and the arguments the taxpayer is making are equally plausible under this regulation. What do we do? Well, then we would ask for, and I think in our brief we've asked for our deference, because historically the courts have always deferred to the agency's interpretation of its own regulation. No deference to the tax court. No, and, in fact, in the Dobson case in the Supreme Court in 1942, I believe, the Supreme Court deferred to the tax court and Congress overruled it. We don't often get cases cited prior to the date of my birth. Wow. This is one of those time-honored cases, huh? But Congress legislatively overruled the Dobson decision in Section 7482A1 of the Code to provide that a tax court decision is reviewed just to the same extent as that of a district judge sitting in the District of Columbia, which is de novo as to law and clearly erroneous as to facts. So anyway . . . These are complicated instruments, aren't they? This isn't your ordinary term life policy. There's a mutual fund aspect to it. Am I correct about that? It's not term. And any kind of whole life insurance, and this is universal, which is a subset of whole life. Okay. It has an investment feature. Right. And that is the thing that the Supreme Court relied upon in Guggenheim v. Raskin in saying that you shouldn't value a life insurance contract at whole life, paid up whole life, but you shouldn't value it at liquidation value because surrender charges are artificial. They're intended to prevent the owner of the policy from doing something that's against his interest. And it doesn't take into account the investment value of the property or the fact that you can collect the face amount of the policy in the event of the insured's death. So we think that Guggenheim v. Raskin supports us, and that's probably the reason that Section 72E3 has this statement in it that you don't value a contract with respect to surrender charges. Do you want to save the rest of your time? I mean, go on if you want to, but you said you wanted to save. Well, I'll say one more thing, and that is that in the Cartwright case, which dealt with mutual funds and whether they could be valued with respect to the load, the court distinguished life insurance and said that's different. And in any event, in Cartwright, the court described the load as a sales charge, and, in fact, in the facts of that case, it never expired. So we think that Cartwright is distinguishable. Very good. We'll save the rest of your time. Mr. Weil. May I please the Court? My name is Jay Weil. I represent the Appellees, petitioners and taxpayers, Michael Schwab and Catherine Kleinman, husband and wife. I think the most important part of the tax court's opinion is at Excerpt of Record 32 through 33, when at the very end of the opinion, the tax court judge said the following, We are not persuaded that at the time of distribution to Schwab and Kleinman, the policies had significant value apart from the small amount of the insurance coverage that was attributable to the single premium that angels and cowboys had paid on each policy some three years earlier. Though the value is small, the calculation is daunting because of the ambiguity in the record, and we make a tentative effort to ascertain exact figures. So in this case, the tax court didn't consider policy values. The tax court didn't consider surrender values. He realized that on October 23, 2003, my client, Michael Schwab, was distributed a policy that had 54 more days before it lasts. Catherine Kleinman got a policy that had 24 days to lapse. The IRS contends, the commissioner contends, the fair market value of a policy lasting 54 days is equal to $48,000, and the policy lasting 24 days is equal to $32,000 and change. Therefore, you're going to be taxed on $81,000. It makes no economic sense. No one is going to pay $48,000 for an insurance policy that lasts 54 days. So what the tax court judge did is, it's a daunting, and I did not offer this at the trial. I made the argument that there was no value because there was no cash surrender value. I understand that. But the tax court judge, who deals with these regs and rev prox and revenue rulings on a daily basis, wrote a 33-page opinion and finally in the end said that I don't think, I'm not going to consider policy value. I'm not going to consider surrender. What is the fair market value of 54 and 24 days of insurance? So what he did is, in his opinion, he went through the base values, the cost, the original cost, multiplied it by the number, the amount of the insurance per thousand, somewhat complicated, and he came up with the figures for Michael Schwab of approximately $1,900. That's what, in his opinion, the fair market value of it was worth on that day, October 23rd. And for Katherine Kleinman, 765 days, $75. She only had 24 more days on the policy. He gave the government the option, in footnote, I believe 17 of his opinion, since this is the first time, if you think I've done the calculations, file a motion, supplement the record, and nothing was done. So the issue here, and I think there doesn't seem to be any challenge that the only thing Schwab and Kleinman got on October 30th was an insurance policy, one that lasted slightly more than a month and a half and one less than a month. That's all they got. They didn't get $48,000, the policy value. They didn't get $32,000, the policy value. Nobody would buy this kind of policy for that kind of money. So the judge who's attuned, these tax court judges are attuned to these reprox and regulations. He didn't consider policy value. He didn't consider surrender. He took a common sense approach. What is the fair market value of what these taxpayers got on October 23rd? And that I think, so when we get to the code section, which says we agree it's taxable. The amount actually distributed is taxable. Agreed. We know what they got. They got two insurance policies with a very limited life. And the question is how do you determine amount? Well, fair, so the tax court judge also determined that amount would, in this case, since it isn't cash, how do you, you've got to come up with some fair market value of what they got. And this judge did it in this way, not really challenged by the government. The government's, the commissioner's challenge is you just take policy value. That's all you do. You don't go into any other analysis and you don't consider surrender. He chose a different route. It may be, and there's no case or regulation that mandates this is, you know, you have to take policy. You can't take surrender value. There's nothing in there. He went through all the regulations, all the cases, and they go all over the place. But so he did. He did it, I think, in an economically insensible way. Again, I think the issue is what's the fair market value of these two policies? Let's assume for a minute that I agree with you about the common sense. But the commissioner argues that, at best, these are ambiguous regulations and rules, and in those circumstances, under our, we defer to the commissioner. The IRS commissioner has particular deference granted by the courts, as you know. So why is this different? I think we first go, we have a statute that's been in language that's been in existence since 1926, and all we need to, we don't have to go to a regulation. We go right to the statute, 402B2, the amount actual. Yeah, let me just back you up here. Statute controls, and I guess your point is it's not ambiguous, and the regulation simply doesn't address the issue before us. So therefore, we just go to the statute, and that's what the Judge Holmes did. He said when regulation doesn't cover it, this is not ambiguous, it's fair market value. Is that your perspective? Correct. That's exactly my position, Your Honor. Okay. I have nothing further to say unless there's a question from the court. Thank you. So I just want to stress that the Supreme Court rejected the liquidation value for whole life insurance policies. It's true that the case before it was one where it was a paid-up policy, but the principles that you still have something in the way of investment value and you have the right to collect if the insured dies. Well, yeah, I guess that's the one fly in the ointment. But as a practical matter, you're obviously a very intelligent investor, I'm sure. You wouldn't buy either one of these policies, would you? Well, I wouldn't buy one of these. Unless you knew they had a really serious disease and were ready to expire. If I bought a whole life insurance policy today, tomorrow it would be I'd have a negative cash surrender value. But that doesn't mean that I've done a foolish thing. It just means that my investment is illiquid. So when Congress provided in Section 72 that you're going to value these things without taking surrender charges into account, that was not, you know, it's a congressional judgment that has to be upheld, but it's not a bad judgment anyway. So unless the court had any other questions. Do you have any questions? I think not. We thank you both. We don't hear a lot of tax court case arguments here, so it's kind of fun. It takes us back to the good old days in law school. Anyway, the court is now in recess. We thank you all for coming. And that case, I preceded that case's 1942 case. I'm older than that.
judges: Carr, Hawkins, Smith